*Commonwealth v. Moore.*

---

## CLARENDON WHEELOCK *versus* AMASA HENSHAW.

In an action of trespass against the defendant for attempting to use a water privilege mortgaged by him to the plaintiff with general warranty, the defendant would be estopped by his deed to deny that the water privilege passed to the plaintiff; but if it be agreed by the parties, in a case stated, that the defendant had no title, so that nothing passed by his deed, he may avail himself of this fact in defence to the action.

TRESPASS *quare clausum*. The parties submitted the action to the determination of the Court, upon an agreed statement of facts.

The act complained of as a trespass was admitted; and if the plaintiff was entitled to recover, he was to have nominal damages.

On the 7th of March, 1832, Lewis Thayer granted to Henshaw " a privilege of drawing water from a pond in New Wor-

29*

cester, to be raised by a dam to be erected, &c.; said Thayer is to erect a dam ten feet high, &c.; said Thayer, his heirs or assigns, are to draw, in the first place, from said pond, sufficient water to carry four sets of woollen machinery, or for other business requiring no more water than four sets of woollen machinery, &c. The privilege intended to be conveyed to said Henshaw is subject to the following restrictions, limitations and conditions :

1. Said Henshaw is to draw no water when the water is four feet below the top of the dam to be erected as aforesaid ;

2. Said Thayer reserves for himself, his heirs and assigns, &c., that is, said Henshaw's privilege is to consist of all the surplus water from said pond, except so much as is necessary to propel the machinery aforesaid, and said Henshaw is in no case to draw the water lower than four feet from the top of the dam."

This deed contained covenants of seisin, right to convey, and general warranty.

On the same 7th of March, 1832, Henshaw gave back to Thayer a mortgage of the above-granted premises, in fee, with like covenants ; and subsequently the mortgage was assigned to Wheelock.

At the several periods when Thayer made his deed to Henshaw and assigned the mortgage to Wheelock, he was the owner of a parcel of land on the southeast side of the river with a right to abut a dam upon the land of Henshaw on the opposite side, and he owned a very small part of the land above, which would be flowed by erecting a dam across the river.

About one hundred rods above the premises there was an ancient water privilege, dam and mill, which were owned by one Eldridge. The wheel and privilege of this mill would be submerged by raising the water to any greater height than six feet by a dam placed on Thayer's premises.

After the plaintiff became sole seised of the premises, he erected a dam thereon, whereby he could raise a head of water to the height of ten feet, he not knowing at that time the effect which would be produced on the dam, privilege and mill of Eldridge ; but this was ascertained by the experiment of raising the water. As soon as it rose above six feet, the plaintiff was

ıesisted by Eldridge, on account of the nuisance which it occasioned to the ancient mill ; and the plaintiff was compelled to draw the water down, so that it did not rise higher than six feet. Thayer never had any right to flow the water back upon Eldridge's mill.

Eldridge's mill and privilege were conveyed to one Damon, and after that conveyance Wheelock, by indenture dated February 16th, 1835, leased to Capron and Parkhurst, for ten years, the premises conveyed to him by Thayer, reserving the right of using all the surplus water in the stream, after furnishing a supply for certain purposes to the lessees.

After this lease was made, Capron and Parkhurst became the purchasers and grantees from Damon, of the ancient privilege, and after this purchase and before the alleged trespass, Capron and Parkhurst, for the purpose of using the water more advantageously, under their lease, raised the water to the height of ten feet, whereby the ancient privilege was submerged and rendered of no value.

Capron and Parkhurst never made any grant to the defendant, nor gave him authority to do any thing to the premises or to draw any water from the pond.

The trespass alleged to have been committed by the defendant consisted in his attempt to cut through the dam for the purpose of inserting a floom therein, by means of which he could draw the water from the pond, which he claimed a right to do. He had removed some of the stones and gravel, when he was resisted by the plaintiff; and further proceedings were thereupon stayed by consent, until the legal rights of the parties could be determined.

If the defendant had no right to make a floom in the dam and draw water from the pond, he was to be defaulted ; otherwise the plaintiff was to become nonsuit.

*Merrick*, for the plaintiff.

*Newton* and *Conant*, for the defendant.

WILDE J. delivered the opinion of the Court. The defendant undertakes to justify the trespass charged, under a deed from one Lewis Thayer, from whom both parties derive their title. By that deed, dated March 7th, 1832, Thayer granted to the defendant the right and privilege of drawing water from

Wheelock
*v.*
Henshaw.

*Oct.* 10th
1836.

*Oct.* 9th,
1837.

a pond which the grantor was about to raise by erecting a dam to be ten feet high, and which he was to keep in repair, and to pay all damages for flowing. The right however was limited to the surplus water above the level of six feet at the dam, and with the exception also of the water which might be necessary to propel certain machinery described in the deed, belonging to Thayer.

Before considering the rights and privileges granted by that deed to the defendant, a previous question is raised by the statement of facts, which may render the construction of the deed, in relation to the circumstances of the case, unimportant. It appears that at the time of the grant, the defendant gave back a mortgage deed to Thayer of the granted premises, which mortgage has been duly assigned to the plaintiff; so that the plaintiff is now entitled to all the rights of the original mortgagee ; and it does not appear that these rights have been impaired or altered by any agreement as to the possession of the mortgaged property or privileges. And the principle is well settled, that the mortgagee is the legal owner of the mortgaged property ; and if it is real estate, he becomes immediately seised, upon the execution of the mortgage, and no previous entry or notice to quit is necessary to enable him to maintain trespass or ejectment, but he may elect to consider the mortgagor as a deforciant, whenever he pleases, without any other ceremony than the commencement of an action. *Erskine* v. *Townsend*, 2 Mass. R. 493 ; *Newall* v. *Wright*, 3 Mass. R. 152. If there be no agreement that the mortgagor shall retain possession, the mortgagee may immediately enter and take possession. Or, if the mortgagor refuses to quit the possession, the mortgagee may consider him as a trespasser, and may maintain an action of trespass against him.

In the present case the defendant is not in possession of the estate out of which the privilege was granted, nor of the privilege which he now claims. The plaintiff possesses this privilege by virtue of his mortgage. No actual and visible possession can be taken of a privilege or an incorporeal hereditament. The defendant therefore has neither the possession nor the right of possession ; and his claim to enjoy the privilege and

receive the profits to the injury of the plaintiff and against his will, cannot be maintained.

But although this ground of defence fails, it does not follow that the plaintiff is entitled to judgment. He must establish some title in himself, before the defendant can be put on his defence.

The defendant's claim is limited to the right of drawing water from the pond when the water rises at the dam over six feet ; and he has no right to any water except the surplus above six feet. Now it is admitted, that Thayer had no right to raise the water above that level. Nothing therefore passed by his grant to the defendant, and the defendant had no property in or title to the surplus water, and consequently had nothing to mortgage. Thayer's covenant as to his right and title, was immediately broken on the delivery of his deed. And so it was held in a former action brought by the present plaintiff against Thayer. (16 Pick. 68.) To this objection it would be a sufficient answer, if the plaintiff had rested his claim on that point, that the defendant is estopped by his deed, to deny that he had any right in the property mortgaged. But on this statement of facts, the plaintiff is not allowed to avail himself of the estoppel ; for it is expressly admitted, that Thayer never had any right to flow the water back upon Eldridge's ancient mill, and that he consequently had no right to raise his dam above the height of six feet. This fact being agreed, the defendant is not estopped to rely on it as an objection to the plaintiff's title. A party is not to be estopped when the truth appears by the pleadings and record. Com. Dig. *Estoppel,* *E* 2 ; Co. Lit. 352. If a party pleads a fact which he might be estopped to plead, and the other party takes issue on the fact, instead of relying on the estoppel, and the jury find the truth of the fact, judgment will be rendered accordingly, without regard to the estoppel. Com. Dig. *Estoppel,* *E* 11. The same principle applies when the parties agree to submit a case to the decision of the Court upon certain facts agreed. Upon these facts it appears manifest, that the plaintiff has no title to draw off the surplus water in question. This right is vested exclusively in Capron and Parkhurst, by their purchasing in the ancient privilege from Eldridge. If Wheelock or Thayer had purchased

Wheelock
v.
Henshaw.

this privilege, it might enure to the benefit of the defendant; but the purchase by Capron and Parkhurst can no more avail these parties, than the purchase would by any other stranger.

*Note.* Judgment was afterward rendered for the plaintiff, by consent, for one dollar, damages.